UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
Charles Antongorgi, *pro se*,

                       Plaintiff,                     **OPINION AND ORDER**

      -against-                               06-CV-5777 (DLI)(LB)

Gus Bovena, President, Local 32-B, 32J
Service Employees International Union;
Atco Properties & Management, Inc.;
James Sweeney, Office of the Contract Arbitrator,

                      Defendants.
----------------------------------------------------------------x

**DORA L. IRIZARRY, U.S. District Judge:**

Plaintiff Charles Antongorgi, appearing *pro se*, commenced this action in New York State Supreme Court, Kings County, on June 27, 2006, against defendants Gus Bovena,[1] President, Local 32-B, 32J Service Employees International Union ("Local 32BJ" or "Union") and James Sweeney,[2] Office of the Contract Arbitrator ("OCA") (collectively "defendants").[3] Plaintiff's complaint is styled as a hybrid claim under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, alleging that (1) plaintiff's employer violated the collective bargaining agreement ("CBA") by unjustly suspending him and failing to pay him for unused sick time and for a holiday,

---

[1] The court notes that the proper spelling of the name is Bevona. The court presumes that plaintiff is suing Mr. Bevona in his capacity as the President of Local 32BJ, not individually. As such, plaintiff's complaint is against the Union.

[2] The court further presumes that plaintiff is suing Mr. Sweeney in his capacity as administrator of OCA, not individually. As such, plaintiff's complaint is against OCA.

[3] Plaintiff attempted to serve a third defendant, Atco Properties & Management, Inc.; however, service was not complete because plaintiff mailed the summons and complaint to an incorrect address.

1

and (2) the Union breached its duty of fair representation by failing to adequately process his grievances concerning these matters. On October 25, 2006, defendants removed the action to this court. Defendants now move to dismiss the complaint under Fed. R. Civ. P. 12(b)(6). For the reasons set forth below, defendants' motion to dismiss is granted in its entirety.

**Background**

Plaintiff alleges that he was employed by Atco Properties & Management, Inc. ("Atco") for ten years as a porter at 381 Park Avenue South in Manhattan, and was a member of Local 32BJ. (Compl. ¶ 4.) Plaintiff further alleges that he was unjustly suspended approximately three times in 1993 and 1994, and that he did not receive pay for unused sick time and the Martin Luther King Jr. holiday in 1994. (*Id*. at ¶¶ 6-9.) Plaintiff filed grievances protesting the suspensions and lost pay. (*Id*.) Arbitration hearings were scheduled, but they were adjourned approximately three times through 1996. (*Id*. at ¶¶ 6-12.) Atco requested an adjournment on at least one occasion, and another adjournment was granted to allow the Union to amend the arbitration notice to include plaintiff's additional grievances. (Pl.'s Resp. to Defs.' Mot. to Dismiss Ex. A.) By the time the hearing was ultimately held, plaintiff was incarcerated in an unrelated matter and unable to attend. (*Id*. at ¶ 13.) Plaintiff claims that, although he advised the Union of his incarceration and requested that the arbitration hearing be held at a location where he could attend, the Union refused the relocate the hearing. (*Id*. at ¶¶ 14-15.) As a result, the arbitrator issued a default award in July 1996. (*Id*. at ¶¶ 11-13.) Plaintiff received a "letter advising him of [the award]" on July 22, 1996. (*Id*. at ¶ 11.)

**Discussion**

I.   **Standard for a Motion to Dismiss**

When considering a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all

2

factual allegations as true and draw all reasonable inferences in the non-moving party's favor. *Dangler v. New York City Off Track Betting Corp.*, 193 F.3d 130, 138 (2d Cir. 1999). The court may consider documents upon which the plaintiff relied when drafting the complaint, such as "documents attached to the complaint as an exhibit or incorporated in it by reference, . . . matters of which judicial notice may be taken, or . . . documents either in plaintiff['s] possession or of which plaintiff[] had knowledge and relied on in bringing suit." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Brass v. Am. Film Techs. Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)). In *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955 (2007), the Supreme Court rejected the "oft-quoted" standard set forth half a century ago in *Conley v. Gibson,* 355 U.S. 41, 78 (1957), that a complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id*. at 45-46. The Court "retire[d]" *Conley's* "no set of facts" language in favor of the requirement that plaintiff plead enough facts "to state a claim for relief that is plausible on its face." *Bell Atlantic Corp.,* 127 S. Ct. at 1974.

The Second Circuit has not interpreted the foregoing language to require a "universal standard of heightened fact pleading;" rather, it requires a "flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Iqbal v. Hasty,* 2007 WL 1717803, at *11 (2d Cir. June 14, 2007) (emphasis in original). However, *Bell Atlantic* holds that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp.,* 127

3

S. Ct. at 1964-65 (citations omitted).

In actions in which one of the parties appears *pro se*, the court is faced with the additional responsibility of granting significant liberality in how *pro se* pleadings are construed. *See Haines v. Kerner,* 404 U.S. 519, 520 (1972) (*per curiam*) (*pro se* pleadings held "to less stringent standards than formal pleadings drafted by lawyers."); *accord Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) ("[W]e read [the *pro se* party's] supporting papers liberally, and will interpret them to raise the strongest arguments that they suggest."). Nevertheless, "proceeding *pro se* does not otherwise relieve a litigant from satisfying the usual pleading requirements." *Strachova v. Metro. Museum of Art,* No. 98 Civ. 8505, 1999 WL 566305, at *6 (S.D.N.Y. Aug. 3, 1999), *aff'd,* 208 F.3d 204, 2000 WL 303203 (Table) (2d Cir. 2000).

## II. Statute of Limitations

Defendants first move to dismiss the complaint because plaintiff's claims against his employer for violating the CBA and the Union for breach of its duty of fair representation are time-barred. The statute of limitations for hybrid causes of actions brought under Section 301 of the LMRA is six months from the time when the employee knew, or should have reasonably known, that such a breach occurred. *DelCostello v. Int'l Bhd. of Teamsters,* 462 U.S. 151, 171 (1983) (adopting the six-month limitations period provided by Section 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b) (1988)); *Woods v. Dunlop Tire Corp.,* 972 F.2d 36, 37 (2d Cir. 1992), *cert. denied,* 506 U.S. 1053 (1993). Under Second Circuit law, however, an employee's hybrid cause of action does not accrue until after "there has been some adverse outcome in the arbitration." *Ghartey v. St. John's Queens Hosp.,* 869 F.2d 160, 163 (2d Cir. 1989).

Here, plaintiff's claims are clearly time-barred because he waited nearly ten years after the

arbitrator had issued a default award in July 1996 to file the instant lawsuit. Construed liberally, plaintiff appears to argue that his claims are not time-barred because, as the Union did not respond to plaintiff's inquiries, he was unaware of the arbitrator's final decision until he filed an "'Exparte Motion' in the State Supreme Court." (Pl.'s Resp. to Defs.' Mot. to Dismiss 5-6.) A plain reading of the complaint, however, belies plaintiff's argument because it states that "[o]n July 22, 1996[ ] Mr. Antogorgi received a letter advising him of an AWRD [Emphasis Added]. Rendered by the Arbitrator with regards to his case." (Compl. ¶ 11.) Moreover, plaintiff concedes in his response to defendants' motion to dismiss that he received the default award, and attaches the July 22, 1996 cover letter to the arbitration award from the Union to him, as well as the last two pages of the arbitration award itself. (Pl.'s Resp. to Defs.' Mot. to Dismiss 2, Ex. A.) Finally, even assuming that plaintiff did not receive a copy of the default award in July 1996, plaintiff should have become aware at some point in the ensuing six months, or at least long before filing the instant complaint in 2006, that the alleged breach had occurred. *See Cohen v. Flushing Hosp. & Med. Ctr., et al.,* 68 F.3d 64, 68-69 (2d Cir. 1995) (citing *Metz v. Tootsie Roll Indus., Inc.,* 715 F.2d 299, 303-04 (7th Cir. 1983), *cert. denied,* 464 U.S. 1070 (1984)); *see also Joseph v. Local UAW 1097 Union,* 917 F. Supp. 188, 192 (W.D.N.Y. 1996) (finding period of over five years between withdrawal of grievance and commencement of lawsuit, during which time there was no apparent reason for union member to think that grievance was being pursued, to be too long a time for member to avoid having constructive notice of accrual of his claim for breach of the duty of fair representation for limitations purposes).

      Accordingly, this action is barred by the statute of limitations applicable to plaintiff's claims.

**III. Merits of Plaintiff's Claims**

Setting the untimeliness of plaintiff's claims aside, defendants next move to dismiss the complaint for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6).

To establish a hybrid claim under Section 301, a plaintiff must prove both that: (1) the employer breached a collective bargaining agreement; and (2) the union breached its duty of fair representation vis-a-vis the union members. *See DelCostello,* 462 U.S. at 164-65. The plaintiff may sue the union or the employer, or both, but must allege violations on the part of both. *Id*. at 165. A claim for breach of the duty of fair representation consists of two elements. First, the union's conduct must have been "arbitrary, discriminatory or in bad faith." *Vaca v. Sipes,* 386 U.S. 171, 190 (1967). "[A] union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness,' as to be irrational." *Marquez v. Screen Actors Guild, Inc.,* 525 U.S. 33, 44 (1998) (quoting *Ford Motor Co. v. Huffman,* 345 U.S. 330, 338 (1953)). "This 'wide range of reasonableness' gives the union room to make discretionary decisions and choices, even if those judgments are ultimately wrong." *Id*. at 43-46. A showing of "[b]ad faith requires a showing of fraudulent, deceitful, or dishonest action." *Sim v. New York Mailers' Union No. 6,* 166 F.3d 465, 472 (2d Cir. 1999). Second, a plaintiff must prove that the union's wrongful conduct "seriously undermine[d] the arbitral process." *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 567 (1976).

Plaintiff does not allege sufficient facts to render his duty of fair representation claim against the Union plausible. Plaintiff claims that the Union breached its duty because (1) the arbitration hearing on his grievances was adjourned approximately three times, (2) plaintiff was unable to attend the hearing when it was ultimately held because he was incarcerated at the time, (3) the Union

6

declined to relocate the hearing to a location where plaintiff could attend, and (4) the arbitrator issued a default award because of plaintiff's failure to appear. Plaintiff does not claim, however, that either the adjournments or the Union's decision not to relocate the hearing, presumably to the prison where plaintiff was incarcerated at the time, were arbitrary, discriminatory or in bad faith, nor does he assert any facts supporting such a claim. Moreover, the documents attached to plaintiff's response show that the employer requested at least one of the adjournments, and another adjournment was granted to allow the Union to amend the arbitration notice to include plaintiff's additional grievances. (Pl.'s Resp. to Defs.' Mot. to Dismiss Ex. A.) Plaintiff also does not claim that any misconduct on the part of the Union caused the arbitrator to issue the default order sustaining plaintiff's discharge. Although plaintiff's inability to attend the hearing was unfortunate, it can hardly be said that it was caused by the Union's misconduct. Defendants are therefore entitled to dismissal on this ground as well.

## IV.    Immunity From Suit

It is well-settled that arbitrators, organizations that sponsor arbitration, and bodies administering arbitrations, such as OCA, are immune from civil liability in actions contesting the process or results of arbitration. *See Barbara v. New York Stock Exch.*, 99 F.3d 49, 58 (2d Cir. 1996) (citing *Austern v. Chicago Bd. Options Exch., Inc.,* 898 F.2d 882, 885-87 (2d Cir. 1990), c*ert. denied,* 498 U.S. 850 (1990); *Corey v. New York Stock Exch.,* 691 F.2d 1205, 1208-11 (6th Cir. 1982)). Thus, OCA is absolutely immune from plaintiff's claims for money damages, regardless of whether plaintiff is alleging that OCA unreasonably delayed his arbitration hearing or erroneously issued a default award. Plaintiff's claims against Mr. Sweeney are dismissed.

7

**Conclusion**

For the reasons set forth above, defendants' motion to dismiss is granted in its entirety. The complaint is dismissed without costs to either party.

SO ORDERED.

DATED: Brooklyn, New York
July 24, 2007

_____/s/_____
DORA L. IRIZARRY
United States District Judge